UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FRANCIS ANDERSON           :
    *Plaintiff,*           :   CIVIL  NO. 3:02CV728(RNC)(JGM)
                               :
    VS.                    :
                               :
JAMES HUCKABEY, ET AL.     :
    *Defendants.*          :   APRIL 7, 2004

**DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

**I.   FACTS**

Plaintiff brings this action under 42 U.S.C. § 1983 against defendants James Huckabey, Warden Myers, Major Lajoie, Captain Faneuff, Lt. Salius, Lt. Loubier, Lt. Lloyd, Ms. McSinnati, C/O Moya, C/O Maia,, C/O Reardon, C/O Ames and C/O Jacksen.  On or about March 15, 2004, this matter was dismissed at to defendants Lloyd, Moya and Lajoie.

In this lawsuit, plaintiff alleges that on November 6, 2001, after exchanging insults with the defendant Faneuff, defendant Ames placed handcuffs on the plaintiff, which were tighter than usual. Corrected Amended Complaint ("Complaint") par. 6-7.  Plaintiff also alleges that defendants Ames, Jacksen and Faneuff escorted plaintiff to a new cell where the defendant Faneuff then punched plaintiff once in the mouth and twice in the stomach.  Complaint par. 8-10.

Plaintiff also alleges that on November 10, 2001, the defendant Salius told plaintiff to back up from his door and then stated, "That's a good boy, you know your place."  Complaint par. 13. Plaintiff also alleges that on November 15, 2001, another inmate flooded the shower area, causing urine and feces to flood the tier area.  Plaintiff also alleges that defendant Maia, while escorting

plaintiff to a shower, pushed plaintiff to the floor, causing plaintiff to fall face first into urine and feces. Complaint par. 15.

According to the plaintiff, another inmate flooded the housing tier on November 17, 2001. Complaint par. 17. Plaintiff alleges that defendant Salius told him to back up, and plaintiff responded "F_ _ _ you." Complaint par. 17. According to the plaintiff defendant Salius and about nine other correctional officers came to his cell to place him on in cell restraints. Complaint par. 17. Plaintiff alleges that the restraints were placed on so tightly that they broke his skin. Complaint par. 18. In addition, plaintiff claims that the tether chain was shortened up so that plaintiff had to remain bent over. Complaint par. 18. According to the plaintiff, defendant McSininati examined the restraints and reported that they were properly applied. Complaint par. 19.

Plaintiff claims that the restraints were affixed in such a matter that he could not use the toilet and when he complained about this fact, he was told that Lt. Salius would be by later. Complaint par. 20. According to the plaintiff defendant Salius ignored plaintiff causing plaintiff to defecate on himself. Complaint par. 21.

Plaintiff alleges that he asked defendant Loubier if he could shower and Loubier refused this request. Complaint par. 22. According to the plaintiff, about 20 minutes later, Loubier, Reynolds and Reardon came to his cell, and slammed plaintiff's face into the wall and held the plaintiff while another officer cut and ripped the soiled jumpsuit off of him. Complaint par. 23. Plaintiff claims that he brought the foregoing matters to the attention of defendant Huckabey who has ignored plaintiff's complaints and/or not responded to them. Complaint par. 24.

These allegations were previously raised in the matter Anderson v. Hucklebey, 3:01CV2134(RNC) which was part of a global settlement and thus dismissed with prejudiced on or about January 29, 2002.  Statement of Material Facts Not in Dispute par. 1.

More specifically, in an amended complaint filed on December 14, 2001, in matter 3:01CV2134, plaintiff alleged the following:

1).  On November 6, 2001, Captain Faneuff came to plaintiff's cell with correctional officers Jacksen and Ames.  Statement of Material Facts Not in Dispute par. 2.

2)  After plaintiff exchanged insults with Captain Faneuff, defendant Ames put handcuffs on plaintiff real tight.  Statement of Material Facts Not in Dispute par. 3.

3)  After plaintiff was moved into a new cell, Captain Faneuff punched plaintiff in the mouth and twice in the stomach.  Statement of Material Facts Not in Dispute par. 4.

4).  On or about November 10, 2001,  Lt. Salius told plaintiff to back up from his cell door and then said "Yeah, that's a good boy, you know your place."   Statement of Material Facts Not in Dispute par. 5.

5).  On November 15, 2001, another inmate flooded the tier with urine and feces.  Statement of Material Facts Not in Dispute par. 6.

6).  While being escorted to his shower, C/O Maia pushed plaintiff causing him to fall face first into urine and feces.  Statement of Material Facts Not in Dispute par. 7.

7).  On or about November 17, 2001, another inmate flooded the tier again and Lt. Salius ordered plaintiff to back up from his door to which plaintiff responded, "F- - - you."  Statement of Material Facts Not in Dispute par. 8.

8). About 15 minutes later, Lt. Salius came back with 9 other correctional officers who placed plaintiff on in cell restraints. Statement of Material Facts Not in Dispute par. 9.

9) The handcuffs were tightened so that they broke the skin, and the tether chain was applied in such a fashion that plaintiff had to remain bent over. Statement of Material Facts Not in Dispute par. 10.

10). Nurse McSininati checked the handcuffs and said they were properly applied. Statement of Material Facts Not in Dispute par. 11.

11). Plaintiff complained to staff that he needed to use the bathroom and they told him that Lt. Salius would be by. Statement of Material Facts Not in Dispute par. 12.

12). Lt. Salius never came by and plaintiff was forced to defecate on himself. Statement of Material Facts Not in Dispute par. 12.

13). Plaintiff asked Lt. Loubier if he could get a shower, and Lt. Loubier said no. Statement of Material Facts Not in Dispute par. 13.

14). Twenty minutes later, Lt. Loubier came back with some correctional officers, one of whom was C/O Reardon who slammed plaintiff's face into the wall while the other correctional officers ripped the soiled jumpsuit off of him. Statement of Material Facts Not in Dispute par. 13.

On or about January 14, 2002, plaintiff signed a stipulation of dismissal, agreeing to dismiss the claims set forth above with prejudice. Statement of Material Facts Not in Dispute par. 14. This dismissal was part of an overall settlement agreement under which plaintiff received a) $4,000 and the waiver of up to $200 of any restitution monies he owed to the State of Connecticut, b) a transfer to Garner Correctional Institution for evaluation and treatment for as long as plaintiff i) continued to benefit from treatment and/or ii) did not assault staff, other inmates and/or destroy state property.

Statement of Material Facts Not in Dispute par. 15. In return, plaintiff signed a release stating, that he released and forever discharged,

> The State of Connecticut, the State of Connecticut Department of Correction and its agents, officials or employees, . . . . .James Hucklebey, James Shea, Captain Faneuff, T. Murphy, Larry Myers, N. Hill, Major Lajoy, Lt. Salius, Lt. Loubier, Lt. Lloyd, McSerinati, C/O Moya, C/O Maia, C/O Reardon, C/O Ames, and C/O Jacksen and any and all defendants named by Francis Anderson in any action brought by Francis Anderson against the state of Connecticut, employees, agents, officials which is pending on this date. . . including but not limited to the following matters: . . . . Anderson v. Hucklebey, 3:01CV2134(RNC).

Statement of Material Facts Not in Dispute par. 16.

The court approved this settlement on or about January 29, 2002.

Because res judicata and accord and satisfaction bar plaintiff from attempting to be compensated a second time for the same incidents, summary judgment should issue in this matter.

## II.    ARGUMENT

### A.    SUMMARY JUDGMENT STANDARD

Under Rule 56(c), Fed.R.Civ.P., summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). See also, Quarles v. General Motors Corp., 758 F.2d 839, 840 (2d Cir. 1985) (per curiam). A party may not rely "on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986) cert denied 480 U.S. 932, 107 S.Ct. 1570 (1987) (emphasis added). The party opposing a motion for summary judgment "may not

5

rest upon the mere allegation or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. § 56(e).

Summary judgment dispositions have been encouraged as a valuable means for avoiding unnecessary trials, and modern Supreme Court and Second Circuit cases have encouraged its use for that purpose. See, e.g., Celotex Corp. v. Catrett 477 U.S. 317, 106 S.Ct. 2548, 2555, 91 L.Ed. 2d 265 (1968); H.L. Hayden Co. of N.Y. v. Siemens Medical Systems, 879 F.2d 1005, 1011 (2nd Cir. 1989); Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2nd Cir. 1986) cert. denied 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). Thus "[w]here the record could not lead a rational trier of facts to find for the non-moving party, there is then no 'genuine issue for trial.'" Clements v. County of Nassau, 835 F.2d 1000, 1004 (2d Cir. 1987).

The record in this case, even when considered in a light most favorable to the plaintiff, fully supports the granting of a summary judgment in favor of defendants.

### B. PLAINTIFF'S ATTEMPT TO RELITIGATE CLAIMS THAT WERE PREVIOUSLY DISPOSED OF SHOULD FAIL

1. Plaintiff is Barred by Res Judicata from Pursuing this Action

The doctrine of res judicata serves to prevent plaintiff from attempting to relitigate claims raised in another lawsuit that were dismissed with prejudice. The doctrine of res judicata or claim preclusion states that a final and valid judgment on the merits of a claim precludes subsequent action on that claim.

One Court has reasoned, "[p]laintiffs simply cannot hop from judge to judge bringing actions against different defendants out of the same transaction. Such behavior is utterly at odds with the judicial repose policy." Heritage Hills Fellowship v. Plouff, 555 F. Supp. 1290, 1297-98 (E.D. Mich. 1983). It is clear that a dismissal, with prejudice, arising out of a settlement agreement

operates as a final judgment for res judicata purposes. See, e.g., Nemaizer v. Baker, 793 F.2d 58, 60-61 (2d Cir. 1986).

> A dismissal with prejudice has the effect of a final adjudication on the merits favorable to defendant and bars future suits brought by plaintiff upon the same cause of action. Wainwright Securities, Inc. v. Wall St. Transcript, 80 FRD 103, 105 (S.D.N.Y. 1978). Such a dismissal constitutes a final judgment with the preclusive effect of "res judicata not only as to all matters litigated and decided by it, but as to all relevant issues which could have been but were not raised and litigated in the suit." Heiser v. Woodruff, 327 U.S. 726, 735, 90 L.Ed. 970, 66 S.Ct. 853 (1946); Teltronics v. LM Ericsson Telecommunications, 642 F.2d 31, 35, (2d Cir. 1981).
>
> Id.
>
> [S]ettlement and dismissal of an action operates as a decision on the merits of the claims and precludes relitigation of the claims. See Marvel Characters, Inc. v. Simon, 310 F.3d 280, 287 (2d Cir. 2002)("It is clear that a dismissal, with prejudice, arising out of a settlement agreement operates as a final judgment for res judicata purposes.") . . . . Defendant's motion to dismiss is granted as to all claims that were included in Hunnicutt's settled state habeas action as well as all claims included in or relating to claims asserted in the settled civil rights cases.
>
> Hunnicutt v. Armstrong, Ruling on Defendants' Motion to Dismiss, 3:03CV627(PCD)

(D.Conn. February 25, 2004)(attached).

Here, as is apparent by the signature line on page six of the settlement agreement, plaintiff had counsel assisting him in negotiating the global settlement. Statement of Material Facts not in Dispute 17. The claims which plaintiff seeks to raise in this case are identical to the claims which plaintiff raised in Anderson v. Hucklebey, 3:01CV2134 and which claims were dismissed on or about January 29, 2002.

In this lawsuit, plaintiff alleges that on November 6, 2001, after exchanging insults with the defendant Faneuff, defendant Ames placed handcuffs on the plaintiff, which were tighter than usual. Corrected Amended Complaint ("Complaint") par. 6-7. Plaintiff also alleges that defendants Ames,

7

Jacksen and Faneuff escorted plaintiff to a new cell where the defendant Faneuff then punched plaintiff once in the mouth and twice in the stomach.  Complaint par. 8-10.

In the amended complaint filed on December 14, 2001, in matter 3:01CV2134, plaintiff alleged that on November 6, 2001, Captain Faneuff came to plaintiff's cell with correctional officers Jacksen and Ames.  Statement of Material Facts Not in Dispute par. 2.  Plaintiff also alleged in the 2134 matter that after plaintiff exchanged insults with Captain Faneuff, defendant Ames put handcuffs on plaintiff real tight.  Statement of Material Facts Not in Dispute par. 3.  Plaintiff claimed in the 2134 matter that after he was moved into a new cell, Captain Faneuff punched plaintiff in the mouth and twice in the stomach.  Statement of Material Facts Not in Dispute par. 4.  These allegations are identical to the ones currently before the court in this matter.

Plaintiff also alleges in this matter that on November 10, 2001, the defendant Salius told plaintiff to back up from his door and then stated, "That's a good boy, you know your place."  Complaint par. 13.  Plaintiff alleges further that on November 15, 2001, another inmate flooded the shower area, causing urine and feces to flood the tier area.  In addition plaintiff alleges that defendant Maia, while escorting plaintiff to a shower, pushed plaintiff to the floor, causing plaintiff to fall face first into urine and feces.  Complaint par. 15.

Once again, an examination of the complaint in the 2134 matter shows that these allegations are identical to ones previously made in 2134 which were dismissed with prejudice pursuant to a settlement agreement.  More specifically, in the 2134 complaint, plaintiff claimed that on or about November 10, 2001, Lt. Salius told plaintiff to back up from his cell door and then said "Yeah, that's a good boy, you know your place."  Statement of Material Facts Not in Dispute par. 5.  Plaintiff also sued in the 2134 matter claiming that on November 15, 2001, another inmate flooded

8

the tier with urine and feces and that while being escorted to his shower, C/O Maia pushed plaintiff causing him to fall face first into urine and feces.  Statement of Material Facts Not in Dispute par. 6-7.  Again, because these allegations are indistinguishable from those currently before the court summary judgment should issue in this matter in defendants' favor.

Plaintiff's final claims in this case are that another inmate flooded the housing tier on November 17, 2001, that defendant Salius told plaintiff to back up, and plaintiff responded "F_ _ _ you."  Complaint par. 17.  According to the plaintiff defendant Salius and about nine other correctional officers came to his cell to place him on in cell restraints.  Complaint par. 17.  Plaintiff alleges that the restraints were placed on him so tightly that they broke his skin.  Complaint par. 18.  In addition, plaintiff claims that the tether chain was shortened up so that plaintiff had to remain bent over.  Complaint par. 18.  According to the plaintiff, defendant McSininati examined the restraints and reported that they were properly applied.  Complaint par. 19.  Plaintiff claims that the restraints were affixed in such a matter that he could not use the toilet and when he complained about this fact, he was told that Lt. Salius would be by later.  Complaint par. 20.  According to the plaintiff defendant Salius ignored plaintiff causing plaintiff to defecate on himself.   Complaint par. 21.  Plaintiff alleges that he asked defendant Loubier if he could shower and Loubier refused this request.  Complaint par. 22.  According to the plaintiff, about 20 minutes later, Loubier, Reynolds and Reardon came to his cell, and slammed plaintiff's face into the wall and held the plaintiff while another officer cut and ripped the soiled jumpsuit off of him.  Complaint par. 23.   Plaintiff claims that he brought the foregoing matters to the attention of defendant Huckabey who has ignored plaintiff's complaints and/or not responded to them.  Complaint par. 24.

Again, these identical claims were raised by plaintiff in the 2134 complaint or could have been raised. Specifically, plaintiff alleged that on or about November 17, 2001, another inmate flooded the tier again and Lt. Salius ordered plaintiff to back up from his door to which plaintiff responded, "F- - - you.". Statement of Material Facts Not in Dispute par. 8. Plaintiff also alleged in 2134 that about 15 minutes later, Lt. Salius came back with 9 other correctional officers who placed plaintiff on in cell restraints. Statement of Material Facts Not in Dispute par. 9. Similarly, plaintiff claimed in 2134 that the handcuffs were tightened so that they broke the skin, and the tether chain was applied in such a fashion that plaintiff had to remain bent over. Statement of Material Facts Not in Dispute par. 10. Plaintiff also claimed that Nurse McSininati checked the handcuffs and said they were properly applied. Statement of Material Facts Not in Dispute par. 11. Plaintiff also alleged in 2134 that he complained to staff that he needed to use the bathroom and they told him that Lt. Salius would be by but Lt. Salius never came by and plaintiff was forced to defecate on himself. Statement of Material Facts Not in Dispute par. 12-13. Finally, plaintiff claimed in the 2134 complaint that he asked Lt. Loubier if he could get a shower, Lt. Loubier said no and came back with some correctional officers, one of whom was C/O Reardon who slammed plaintiff's face into the wall while the other correctional officers ripped the soiled jumpsuit off of him. Statement of Material Facts Not in Dispute par. 13.

As is readily apparent from a review of the complaint in the 2134 matter and the complaint in this case, the allegations currently before the court were previously raised in the matter Anderson v. Hucklebey, 3:01CV2134(RNC) which was part of a global settlement and thus dismissed with prejudiced on or about January 29, 2002. Statement of Material Facts Not in Dispute par. 1. Moreover, all the defendants named in this action were named as defendants in the 2134 complaint.

The attachments or exhibits to the two lawsuits are identical with two exceptions: in this matter plaintiff also attached 1) a letter from Commissioner Armstrong dated January 16, 2002 and 2) a document entitled "Motion that Plaintiff Exhausted his Administrative Remedies."

Plaintiff could have raised in the 2134 matter his allegations that defendant Huckabey ignored plaintiff's complaints about these incidents. Indeed, Huckabey was named a defendant in both actions and his December 3, 2001 letter was made an exhibit to both complaints.

Quite simply, the subject matter of the two law suits were identical. Under the principles of res judicata, summary judgment must issue in favor of defendants.

## CONCLUSION

Wherefore, all the foregoing reasons, the defendants respectfully move for summary judgment in this matter.

                                DEFENDANTS,
                                James Huckabey, et al.

                                RICHARD BLUMENTHAL
                                ATTORNEY GENERAL

BY:   /s/_____
       Ann E. Lynch
       Assistant Attorney General
       Federal Bar No. ct08326
       110 Sherman Street
       Hartford, CT  06105
       Telephone No.: (860) 808-5450
       Fax No. (860) 808-5591
       E-mail: ann.lynch@po.state.ct.us

## **CERTIFICATION**

I hereby certify that a copy of the foregoing was sent by first-class mail, postage prepaid this _____ day of April 2004, to:

John Williams, Esq.
Williams and Pattis,
51 Elm Street
Suite 409
New Haven Ct 06510

                                      __/s/_____
                                      Ann E. Lynch
                                      Assistant Attorney General